UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRANCES KENWORTHY,

       Plaintiff,                                 Hon. Janet T. Neff

v.                                          Case No. 1:13-CV-875

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

### REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 42 years of age on her alleged disability onset date. (Tr. 128). She successfully graduated college and worked previously as a waitress, fast food worker, carpet layer helper, and administrative assistant. (Tr. 27-28, 41). Plaintiff applied for benefits on August 12, 2009, alleging that she had been disabled since July 29, 2009, due to manic depression and bi-polar disorder. (Tr. 128-40, 218). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 66-127). On November 1, 2011, Plaintiff appeared before ALJ Jessica Inouye, with testimony being offered by Plaintiff and a vocational expert. (Tr. 31-74). In a written decision dated December 2, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 20-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.


## RELEVANT MEDICAL HISTORY

On November 13, 2007, Plaintiff was admitted to Forest View Hospital after becoming "intoxicated and suicidal." (Tr. 342). Plaintiff remained hospitalized until November 27, 2007 during which time her medications were modified. (Tr. 342-43). Upon discharge, Plaintiff was

diagnosed with bipolar disorder, manic and alcohol dependence.  (Tr. 343).  Plaintiff's GAF score

was rated as 40.[1]  (Tr. 343).

On October 7, 2009, Plaintiff participated in a consultive examination conducted by

Kathryn Kendall, Ph.D.  (Tr. 403-08).  Plaintiff reported that she was experiencing depression, mood

swings, panic attacks, and visual hallucinations.  (Tr. 404).  With respect to Plaintiff's daily

functioning, the doctor observed the following:

> SOCIAL FUNCTIONING: Ms. Kenworthy does not have friends and does not socialize.  She is open and communicative only with her boyfriend.  She is generally nervous around people and was nervous participating in this interview.  She presented as socially appropriate on this date.  She was well spoken and likeable.

> PAST AND PRESENT INTERESTS: Ms. Kenworthy's interests include movies and reading books.

> ACTIVITIES: Ms. Kenworthy and her boyfriend rent a home in Lowell, Michigan.  Her typical daily activities consist of waking at noon after 12 hours of sleep.  She "sits around for two hours, just trying to wake up."  She then attends work or "watches TV all day."  Her boyfriend completes the cooking and she feels she is capable of cleaning and shopping with the assistance of her boyfriend.  She is capable of managing money.  She has a valid driver's license and drives minimally.

(Tr. 405-06).

With respect to Plaintiff's mental status the doctor observed the following:

> ATTITUDE/BEHAVIOR: No symptoms of psychosis were evident and she appeared to be in good contact with reality.  Self-esteem is regarded as poor.  She presented in a kind, friendly and likable manner.  She was well spoken and had appropriate adult social skills.

---

[1]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (hereinafter DSM-IV).  A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

Insight into her condition appeared appropriate and she did not seem to be exaggerating symptoms.  She was tearful throughout the interview.  She is relatively independent in her daily functioning.

STREAM OF MENTAL ACTIVITY: Gross receptive and expressive speech functions were intact.  Thoughts were presented at an even pace and with reasonable clarity.

MENTAL TREND/THOUGHT CONTENT: Ms. Kenworthy sees things out of the corner of her eye that are not there, including seeing deer at night while driving, and people behind her at work.  She denied auditory hallucinations.

EMOTIONAL REACTION: Affect was depressed.

(Tr. 406).

Plaintiff was diagnosed with mood disorder, not otherwise specified, and panic disorder without agoraphobia.  (Tr. 407).  Plaintiff's GAF score was rated as 55.[2]  (Tr. 407).

On November 19, 2009, Plaintiff participated in a consultive examination conducted by Dr. Robert Casimir.  (Tr. 410-14).  Plaintiff reported she was experiencing shoulder pain, high blood pressure, back pain, visual hallucinations, as well as a history of suicide attempts, anxiety, and bipolar disorder.  (Tr. 410).  Plaintiff indicated that her "primary concern regarding her disability" were her emotional impairments.  (Tr. 410).  Plaintiff reported that she was "compliant and is taking all of her medications at the moment."  (Tr. 410).  Plaintiff reported that "her medications do control her depressive episodes," but that "Seroquel causes her drowsiness."  (Tr. 410).  With respect to her complaints of shoulder pain, Plaintiff reported that "her shoulder pain does limit her activities, although she still is able to teach tennis."  (Tr. 410).  A musculoskeletal examination revealed the following:

---

[2]  A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Orthopedic maneuvers: The patient was able to get on and off the examination table with no difficulties. She had no difficulty with heel-to-toe walking, squatting, and hopping were performed without any difficulties. There are no paravertebral muscle spasms. She did have what looked like multiple old scars on her wrist from cutting herself. Motor strength was 4/5 in her right upper shoulder gir[dl]e, 5/5 in the right lower extremity, 5/5 in the left upper extremity, 5/5 left lower extremity. Grip and dexterity are normal.

(Tr. 412).

A neurological examination revealed the following:

Mini-Mental State Examination: She was oriented to person, place and time. She was able to name 3 objects and recall them after 1 minute and 5 minutes. She performed serial 7s very well with a score of 3. Mood and affect in her own words, she said she was currently uptight and nervous. Cranial nerves II through XII are grossly intact. Reflexes are present and symmetrical in all extremities and no disorientation was noted.

(Tr. 413).

Dr. Casimir concluded as follows:

1.      Shoulder pain. The patient does have some limited strength in her right shoulder, although this is not limiting her ability to play tennis even though it does interfere with her overhead serve, but she is still able to perform forehand and backhand tennis maneuvers.

2.      High blood pressure. Her current blood pressure today is 130/80 in both extremities. She is currently on atenolol 25 mg daily which seems to be controlling her high blood pressure.

3.      Bipolar/depression/anxiety/suicidal attempts. The patient seems to be stable on her current medications. She stated to me that she currently has no suicidal ideations. Her current medications are Seroquel, Klonopin, Xanax, and they all seem to be controlling her bipolar and anxiety. She did say that Seroquel makes her drowsy and that she would work better

6

during a day shift.  In that way, it would not interfere with her
Seroquel side effect.  She scored well on Mini Mental Status.

(Tr. 413-14).

On March 31, 2010, Dr. David Moskowitz completed a report describing Plaintiff's "mental/emotional capabilities" and her "ability to do work-related activities on a day-to-day basis in a regular work setting."  (Tr. 434-35).  Dr. Moskowitz conducted psychiatric counseling with Plaintiff for almost two years.  (Tr. 377-401).  With respect to the "mental abilities and aptitudes needed to do unskilled work," the doctor evaluated Plaintiff's abilities in 16 categories.  (Tr. 434). The doctor reported that Plaintiff's abilities were "limited but satisfactory" in two categories, "seriously limited, but not precluded" in five categories, and that Plaintiff was "unable to meet competitive standards" in nine categories.  (Tr. 434).  The doctor also reported that Plaintiff was "unable to meet competitive standards" with respect to her ability to "deal with stress of semiskilled and skilled work."  (Tr. 435).  Finally, the doctor reported that Plaintiff's ability to interact appropriately with the general public and maintain socially appropriate behavior was "seriously limited, but not precluded."  (Tr. 435).  The doctor also reported that Plaintiff's "impairments or treatment" would cause her to be absent from work "more than four days per month."  (Tr. 440).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a

---

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) alcohol abuse; (2) bi-polar disorder; (3) generalized anxiety disorder; and (4) borderline personality disorder traits, severe impairments that whether considered alone or in combination with other impairments, failed to

---

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 22-24).

The ALJ next determined that Plaintiff retained the capacity to perform work "at all exertional levels" subject to the following limitations: (1) she is limited to non-production paced, simple, routine, and repetitive work; (2) she should not work in close proximity to co-workers, meaning she could not function as a member of a team; (3) she can have occasional supervision and contact with the public; (4) she is able to perform work at all exertional levels, however, her ability to reach overhead, push, and pull with her right upper extremity is reduced to occasional; (5) she should avoid concentrated exposure to unprotected heights, moving machinery, vibration, and extreme temperatures; (6) she cannot climb ladders, ropes, or scaffolds; (7) she can occasionally crawl; and (8) she should be allowed to make notes to aid her memory.  (Tr. 24).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Jessica Christensen.

The vocational expert testified that there existed approximately 3,400 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 62-63).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

## I.        Plaintiff has Waived any Argument Regarding Sentence Six Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ.  (Tr. 1-6, 449-61). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination.  This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for

further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

## II.    The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence

At the administrative hearing, Plaintiff testified that she was impaired to a far greater degree than the ALJ recognized and was, therefore, unable to work. The ALJ accorded limited weight to Plaintiff's allegations on the ground that Plaintiff was "not credible." (Tr. 26). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

11

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

With respect to Plaintiff's credibility, the ALJ observed that while Plaintiff testified that she "has not consumed alcohol on a consistent basis or worked since her alleged onset date," the evidence of record indicates otherwise.  (Tr. 26, 39, 54-55).  Specifically, Plaintiff and her boyfriend both submitted function reports indicating that Plaintiff was working on a part-time basis subsequent to her alleged disability onset date. (Tr. 266, 278).  Plaintiff also reported to Dr. Casimir that she "drinks 1 pint of alcohol per week." (Tr. 411).  These inconsistencies more than support the ALJ's decision to discount Plaintiff's testimony as less than credible.  Accordingly, this argument is rejected.

**III.**      **The ALJ's Assessment of Plaintiff's Impairments is Supported by Substantial Evidence**

As previously noted, the ALJ concluded that Plaintiff suffered from several severe impairments, one of which is alcohol abuse.  Plaintiff takes issue with this determination and argues that it was error for the ALJ to make this particular determination.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant suffers from a "severe" impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  This step constitutes a "*de minimis* hurdle intended to screen out totally groundless claims."  *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 576 (6th Cir., Dec. 22, 2009) (citations omitted).  Accordingly, if an impairment imposes "more than a minimal effect" on the claimant's ability to perform "basic work activities," the ALJ "must" find the impairment in question "severe." *Id.* at 576-77.

As discussed above, Plaintiff was hospitalized after becoming "intoxicated and suicidal."  Moreover, Plaintiff was less than candid at the administrative hearing regarding her alcohol consumption.  In sum, the record supports the ALJ's conclusion that Plaintiff experiences alcohol abuse which imposes "more than a minimal effect" on her ability to perform basic work activities.  Accordingly, this argument is rejected.

**IV.**      **The ALJ Failed to Properly Evaluate the Opinion Evidence**

As previously noted, Dr. Moskowitz completed a report regarding Plaintiff's ability to perform "work-related activities on a day-to-day basis in a regular work setting."  As detailed above, the doctor found that Plaintiff was limited to a much greater extent than recognized by the

14

ALJ.  The ALJ, however, afforded "little weight" to Dr. Moskowitz's opinion.  Plaintiff asserts that the ALJ failed to provide sufficient rationale for discounting the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Moskowitz's opinions, the ALJ stated:

> The undersigned gives little weight to this opinion, as it is inconsistent with the medical evidence of record and the claimant's lack of consistent treatment.  These opinions are also inconsistent with the claimant's lack of counseling throughout her alleged period of disability.

(Tr. 27).

First, the ALJ's observation that the doctor's opinion "is inconsistent with the medical evidence of record and the claimant's lack of consistent treatment," is simply too ambiguous to facilitate any meaningful review.  As noted above, the ALJ's rationale "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Moreover, the ALJ's observation that the doctor's opinions are "inconsistent with the claimant's lack of counseling," is a bit misleading.  The record indicates that Plaintiff participated in counseling with Dr. Moskowitz from January 2008 through September 2009.  (Tr. 377-401).  The doctor's opinions are based upon his treatment and evaluation of Plaintiff.  Whether Plaintiff subsequently treated with any other care providers does not necessarily call into question Dr. Moskowitz's opinion.  The Court is not suggesting that Plaintiff's subsequent psychiatric treatment, or lack thereof, is irrelevant only that the ALJ's reliance on such is not sufficiently explained to permit meaningful review.

As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so.  *See Wilson*, 378 F.3d at 544-47.  As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."  A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits

> "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

Because the ALJ has failed to provide sufficiently specific reasons for her assessment of the doctor's opinions, the Court simply cannot assess whether the ALJ's determination in this regard is supported by substantial evidence. While the Court (or Defendant) may be able to identify portions of the record that support the ALJ's assessment, the Court cannot find that the ALJ's conclusion is legally sufficient based upon such after-the-fact rationalizations. Instead, as *Wilson* makes clear, the task of articulating the rationale for discounting a treating physician's opinion rests with the ALJ.

In sum, the ALJ failed to articulate sufficient reasons for discounting Dr. Moskowitz's opinion. In light of the fact that the doctor's opinion is inconsistent with the ALJ's

RFC determination, the ALJ's failure is not harmless.  The ALJ's failure clearly violates the principle articulated in *Wilson* and renders her decision legally deficient.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling).  While the ALJ's decision is legally deficient, there does not exist *compelling* evidence that Plaintiff is disabled.  The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  August 29, 2014                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge